UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. __3:17cv1922__ |
| | ) |
| HOUSING AUTHORITY OF THE | ) |
| CITY OF BRIDGEPORT, d/b/a PARK | ) |
| CITY COMMUNITIES, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## **COMPLAINT**

1. This action is brought by the United States of America to enforce Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"); Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12131-12134 ("Title II" and "ADA"); Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.* ("Fair Housing Act"), and their implementing regulations, 28 C.F.R. pts. 35, 41, and 42 subpt. G and 24 C.F.R. pts. 8 and 100, against the Housing Authority of the City of Bridgeport, doing business as Park City Communities ("HACB" or "Defendant"). The United States brings this action to remedy Defendant's discrimination against individuals with disabilities, including its systematic failure to provide reasonable accommodations in response to requests from tenants and its failure to provide and maintain accessible housing.

## **JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, 2201-2202, 29 U.S.C. § 794a, and 42 U.S.C. § 12133 and 3614(a). Venue is proper

1

in this judicial district pursuant to 42 U.S.C. § 1391(b) because the events giving rise to this action occurred in this judicial district.

## DEFENDANT

3. Defendant HACB is a public housing agency located at 150 Highland Avenue, Bridgeport, Connecticut. HACB receives federal funding from the United States Department of Housing and Urban Development ("HUD"). HACB owns and manages more than 2,600 public housing units ("subject properties") and administers more than 2,800 vouchers under HUD's Section 8 Housing Choice Voucher program.

4. HACB is a recipient of federal financial assistance within the meaning of Section 504, 29 U.S.C. § 794, and HUD's regulations, 24 C.F.R. § 8.3.

5. HACB is a public entity within the meaning of Title II, 42 U.S.C. § 12131, and its implementing regulation, 28 C.F.R. § 35.104.

6. The subject properties are dwellings as defined by the Fair Housing Act, 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

7. HUD has the authority to conduct Section 504 and ADA compliance reviews of public housing agencies receiving federal financial assistance. 24 C.F.R. § 8.56; 28 C.F.R. § 35.172, 35.190(b)(4). In 2004, HUD conducted a compliance review of HACB and found that HACB failed to comply with the requirements of Section 504 and the ADA.

8. On July 27, 2006, HUD and HACB entered into a Voluntary Compliance Agreement ("VCA") in which HACB agreed to take numerous actions to bring its programs in compliance with Section 504. Among other things, HACB agreed to: (1)

analyze its need for accessible public housing units, with a presumed need of 5%, and create a detailed inventory of accessible units, (2) modify units and common areas to meet Uniform Federal Accessibility Standards ("UFAS"), with an investment of at least $1 million per year, and (3) revise its reasonable accommodation transfer procedures, with such requests being distinguished from non-disability transfer requests, and "provide for due consideration of modifying a requester's current unit." The VCA remains in effect until HACB complies with its terms.

9. In 2015, HUD received two Fair Housing Act complaints, *see* 42 U.S.C. § 3610, from two HACB tenants who alleged that they had requested reasonable accommodations for their disabilities that were denied by HACB. The first complaint, filed on or about August 3, 2015, was resolved through a conciliation agreement between HUD, the complainant, and HACB in September 2015. The second complaint, filed on or about November 2, 2015, was investigated by HUD. Based upon the information gathered in the investigation, the Secretary of HUD, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that an illegal discriminatory housing practice had occurred and, on August 11, 2016, issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A). HACB elected to have the claims asserted in the Charge of Discrimination resolved in a civil action pursuant to 42 U.S.C. § 3612(a). The case is currently pending in federal court. *See United States v. Park City Communities, et al.*, 3:16cv1851 (JCH).

10. On August 3, 2015, HUD opened a compliance review of HACB under Section 504 and Title II of the ADA. HUD's investigation focused on HACB's reasonable accommodation policies and procedures and the overall physical accessibility

of its public housing program. HUD also reviewed HACB's compliance with the 2006 VCA.

11. On January 22, 2016, HUD issued a notice of noncompliance with the 2006 VCA to HACB. HUD found that HACB failed to meet the requirements of Section 504's regulations regarding unit accessibility. Specifically, HUD found that HACB had converted only one unit to meet accessibility standards since 2010 and was still far short of its 5% requirement. To date, HACB has still not complied with its obligations under the 2006 VCA.

12. On June 20, 2016, HUD issued a Letter of Findings ("LOF"), which concluded that HACB was not in compliance with Section 504 and Title II of the ADA because of, among other things, its failure to properly process and grant reasonable accommodation requests for individuals with disabilities and its failure to provide accessible units as required by Section 504.

13. On July 13, 2016, HACB requested review of the LOF. On August 16, 2016, HUD issued a Letter of Determination pursuant to 24 C.F.R. § 8.56(h), finding that the record supported HUD's finding of noncompliance.

14. On April 14, 2017, HUD issued a Supplemental Letter of Findings ("SLOF") addressing additional evidence of harm to tenants whose reasonable accommodations requests were improperly processed or denied.

15. On May 15, 2017, HACB responded to the SLOF with a letter questioning HUD's findings, which HUD treated as a request for review.

16. On June 19, 2017, HUD issued a Letter of Determination on the SLOF pursuant to 24 C.F.R. § 8.56(h), again sustaining the finding of noncompliance.

**HACB Failed to Properly Process and Grant Reasonable Accommodations**

17. HACB failed to properly handle requests for reasonable accommodation in both its public housing and voucher programs. Specifically, HACB (1) failed to process requests entirely for a two-year period, (2) failed to fulfill requests for transfer that were granted before November 9, 2014, and (3) improperly rescinded approvals of reasonable accommodations that were previously granted.

18. On August 20, 2015, KimberLee Centeno, HACB's Asset Manager, told HUD during its compliance review that HACB's reasonable accommodation office had been closed for nearly two years. During this period, HACB took no action on reasonable accommodation requests unless an event brought particular attention to the request, such as the filing of a complaint with HUD.

19. On September 23, 2015, HUD's Office of Public and Indian Housing issued an Independent Assessment that found HACB was "not appropriately processing requests for Reasonable Accommodation. [HACB] staff members state that applications had been placed in a box for two years untouched at a site office. The [HACB] is now sorting through the backlog."

20. On December 4, 2015, Ms. Centeno told HUD during its compliance review that around November 9, 2014, HACB's then-Executive Director, George Byers, instructed her to withdraw approvals for and stop processing all requests for unit transfers, including reasonable accommodation transfers that had been previously approved by HACB's attorneys. Ms. Centeno told HUD that this directive impacted approximately 150–200 tenants who had been approved for a transfer as a reasonable accommodation. Mr. Byers confirmed to HUD that he suspended all transfers, including

those granted as a reasonable accommodation. HACB did not inform tenants of this policy unless they called to inquire about the status of their accommodation request.

21. In August and October 2015, HACB produced "reasonable accommodation logs" to HUD identifying nearly 200 tenants who sought accommodations and either had not received a response or were approved for a transfer and not yet moved.

22. From the list provided by HACB, HUD investigators randomly selected files for review and conducted interviews of tenants. In addition to the two tenants who had filed formal Fair Housing Act complaints, HUD identified at least ten tenants with disabilities whose accommodation requests for transfers had been improperly processed, delayed, or denied. HACB's conduct toward these tenants included:

    a. Failing to document or timely respond to requests for accommodation, forcing tenants to make multiple requests before receiving a response from HACB;

    b. Requiring tenants to resubmit documents or rejecting requests for lack of documentation when documentation was not required, had already been provided, or the tenant was not informed that HACB wanted additional documents;

    c. Unreasonably delaying completion of approved transfer requests, causing some tenants to wait up to six years for a transfer;

    d. Offering tenants transfers to units that did not meet their disability-related needs or were not in good condition and, in some cases, failing to offer an alternate unit after the tenant refused the inadequate unit;

e. Failing to engage in an interactive process to determine an accommodation that is reasonable and meets the tenant's disability-related needs;

f. Denying accommodation requests that were reasonable and necessary to allow tenants with disabilities to have an equal opportunity to use and enjoy a dwelling;

g. Arbitrarily rescinding approval of accommodations, and in some cases, failing to inform the tenant that approval had been rescinded.

23. During its review, HUD identified additional instances in which HACB mishandled reasonable accommodation requests by denying, delaying, or failing to act on them. HACB did not provide information on its handling of reasonable accommodation requests other than those requesting unit transfers.

**HACB Failed to Comply with Section 504's Requirements to Provide Accessible Units and Common Areas**

24. Section 504 requires HACB to conduct an assessment of the needs of tenants and applicants for accessible units and to develop a transition plan to meet those needs. In 2007, HACB conducted a needs assessment as required by Section 504 and determined that 5% of its units were required to comply with the Uniform Federal Accessibility Standards ("UFAS").

25. On April 18, 2016, HACB reported to HUD that 61 of its public housing units (2.3%) were UFAS-compliant. HUD found that HACB needed to convert 70 additional units to meet its assessed need (5%).

26. HACB has not demonstrated that an additional 2% of its units are equipped with special features for individuals with hearing or visual impairments, as required by Section 504.

27. HUD found that HACB needed to improve accessibility in building common areas.

**Efforts at Securing Voluntary Compliance and Referral**

28. From August 2016 to July 2017, following issuance of the Letter of Findings, Supplemental Letter of Findings, and two Letters of Determination, HUD corresponded with HACB via mail and email and held several in-person and telephonic meetings to seek HACB's voluntary compliance and resolution of the outstanding violations, as required by Section 504 and the ADA. 29 U.S.C. § 794a; 24 C.F.R. § 8.57(e); 42 U.S.C. § 12133; 28 C.F.R. § 35.172(c). Efforts at resolution were unsuccessful.

29. On July 7, 2017, HUD referred the matter to the Department of Justice for enforcement in accordance with 24 C.F.R. § 8.57(a)(l) and 28 C.F.R. § 35.174.

**CLAIMS FOR RELIEF**

**COUNT I (SECTION 504)**

30. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1–29, above.

31. By its actions referred to in the foregoing paragraphs, among other things, Defendant has subjected qualified individuals with disabilities to discrimination, and has excluded them from participation in and denied them the benefits of programs and activities receiving federal financial assistance, on the basis of their disabilities, in

violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*., and HUD's regulations, 24 C.F.R. pt. 8.

32. Defendant has denied individuals with disabilities access to its public housing program by failing to make an adequate number of housing units accessible to individuals with disabilities, as required by Section 504 and HUD's regulations, 24 C.F.R. pt. 8.

33. Defendant has failed to appropriately consider, process, and grant requests for reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford individuals with disabilities an equal opportunity to use and enjoy a dwelling, as required by Section 504 and HUD's regulations, including 24 C.F.R. § 8.4 and 8.33.

34. Defendant's discriminatory conduct as described above has caused injury to individuals with disabilities and others associated with them.

35. Defendant's actions described in the preceding paragraphs were intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken with disregard for the rights of individuals with disabilities and those associated with them.

**COUNT II (TITLE II OF THE ADA)**

36. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1–29, above.

37. Defendant has discriminated against individuals with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. pt. 35.

38. By the actions set forth above, Defendant has violated the ADA, 42 U.S.C. § 12132, by, among other things:

   a. Failing to ensure that qualified individuals with a disability were not excluded from participation in or denied the benefit of services, programs, or activities, or otherwise being subjected to discrimination by HACB, 28 C.F.R. § 35.130(a);

   b. Utilizing methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(3); and

   c. Failing to make reasonable modifications in policies, practices, or procedures when the modifications were necessary to avoid discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(7).

39. Defendant's discriminatory conduct as described above has caused injury to individuals with disabilities and others associated with them.

40. Defendant's conduct described above was intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken with disregard for the rights of individuals with disabilities and those associated with them.

## COUNT III (FAIR HOUSING ACT)

41. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-29, above.

42. By the actions set forth above, Defendant has:

   a. Discriminated in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection

therewith, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.65; and

b. Refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B) and 24 C.F.R. § 100.204.

43. Defendant's conduct described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act and/or a denial of rights protected by the Fair Housing Act to a group of persons, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

44. Former, current, and prospective residents of the subject properties who have disabilities or are associated with individuals with disabilities who may have been the victims of Defendant's discriminatory conduct are aggrieved persons within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B).

45. Defendant's conduct described above was intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken in disregard for the rights of individuals with disabilities and those associated with them.

**WHEREFORE**, the United States of America prays for relief as follows:

1. A declaration that the discriminatory conduct of Defendant as set forth above violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et seq.*; Title II of the ADA, 42 U.S.C. §§12131-12134; and the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*

2. An injunction against Defendant, its agents, employees, successors, and all other persons in active concert or participation with any of them from:

    a. Discriminating on the basis of disability, in violation of Section 504, Title II of the ADA, and the Fair Housing Act;

    b. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, individuals harmed by the Defendant's discriminatory conduct to the position they would have been in but for the discriminatory conduct; and

    c. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future, including, among other things:

        i. Making an adequate number of housing units accessible to persons with disabilities, as required by Section 504 and HUD's Section 504 regulations, 24 C.F.R. pt. 8 and pt. 40;

        ii. Creating an adequate number of units that are accessible to persons with mobility impairments, vision impairments, and hearing impairments in the population that would be eligible for public housing services provided by Defendant; and

        iii. Implementing effectively a reasonable accommodation policy and granting requests for reasonable accommodations and modifications.

3. An award of monetary damages as will fully compensate individuals with disabilities and those associated with them for the harm caused by Defendant's

discriminatory practices, pursuant to 29 U.S.C. § 794a and 42 U.S.C. §§ 12133 and 3614(d)(1)(B).

4. Assessment of a civil penalty against the Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest.

5. The United States further prays for such additional relief as the interests of justice may require.

Dated: November 15, 2017

JEFFERSON B. SESSIONS, III
Attorney General

JOHN H. DURHAM
United States Attorney

_____/s/_____
JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

_____/s/_____
JOHN B. HUGHES ct 05289
NDIDI N. MOSES, ct 27456
Assistant United States Attorney
United States Attorney's Office
1000 Lafayette Boulevard, 10th Floor,
Bridgeport, CT 06604
Telephone: (203) 696-3000
E-mail: ndidi.moses@usdoj.gov

_____/s/_____
SAMEENA SHINA MAJEED
Chief
ANDREA K. STEINACKER
Special Litigation Counsel
ANNA G. PURINTON, phv09326
Trial Attorney
Housing and Civil Enforcement Section
950 Pennsylvania Ave., NW – G St.
Washington, DC 20530
Telephone: (202) 305-1857
Email: anna.purinton@usdoj.gov